```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

**MICHELLE Y. ROBINSON,**

              **Plaintiff,**

    vs.                                              Civil Action 2:13-CV-1055
                                                           Judge Sargus
                                                            Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

              **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

**I. Background**

      This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 14, and the Commissioner's *Memorandum in Opposition*, Doc. No. 22. Plaintiff has not filed a reply.

      Plaintiff Michelle Y. Robinson filed her applications for benefits on November 20, 2009 and December 28, 2009, respectively, alleging that she has been disabled since April 15, 2006. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      An administrative hearing was held on March 1, 2012. Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. In a decision dated May 22, 2012, the administrative law judge concluded that plaintiff was not disabled from April 15, 2006, through the date of the administrative decision. *PageID* 60-76. That decision became the final

decision of the Commissioner of Social Security when the Appeals Council declined review on September 11, 2013. *PageID* 49-52.

Plaintiff was 36 years of age on her alleged disability onset date. *See PageID* 75, 231. She has a high school education in special education, *PageID* 90, is able to communicate in English, and has past relevant work as a fast food worker, kitchen cook, and laborer. *PageID* 74, 238, 239. Plaintiff was last insured for disability insurance benefits on March 31, 2008. *PageID* 65. She has not engaged in substantial gainful activity since April 15, 2006, her alleged date of onset of disability. *Id.*

## II. Evidence of Record

### A. Physical Impairments

Michelle Graham, M.D., a family practitioner, first saw plaintiff in August 2004. Dr. Graham noted a history of degenerative disc disease. *PageID* 391. In October 2004, plaintiff complained of worsening lumbar pain. *PageID* 389. Lumbar epidural steroid injections were administered. *PageID* 385, 388. A September 2005 MRI, taken after a fall, showed a left-sided L5-S1 disk herniation resulting in some mild effacement of the left lateral recess, disc degeneration at multiple levels, and a small posterior central disc protrusion at the L4-L5 level. *PageID* 398-99. Dr. Graham referred plaintiff to Stephen T. Woods, M.D., of the Spine Clinic at the Ohio State University (OSU) Medical Center, *PageID* 385, who in turn recommended a consultation with a neurosurgeon. *PageID* 367.

E. Antonio Chiocca, M.D., Ph.D., a neurosurgeon, saw plaintiff in October 2005. *PageID* 364-65. Plaintiff complained of low back pain radiating through the hip and down the right lateral aspect of the leg to the foot. *PageID* 364. Dr. Chiocca noted that plaintiff walked with a limp

and could heel walk and toe walk equally. Reflexes were 2+/4+. She had a positive straight leg raise on the right side at about 20 degrees but negative on the left. There were complaints of bilateral hip pain on abduction and extension. Dr. Chiocca diagnosed right L5 radiculopathy caused by the foraminal recess stenosis at L4-5. He ordered a CT scan and an MRI. *PageID* 365.

The November 2005 CT scan showed "some small disc bulges and central disc protrusion at L4-5 and L5-S1 with slight indentation of the dural sac, but no real significant stenosis." *PageID* 377.  MRIs of both hips showed a gluteus medius tendon with some swelling and a possible tear.  *PageID* 378-79.

On January 3, 2006, Dr. Chiocca performed hemilaminectomies and medial facetomies at L4-5 and L5-S1.  *PageID* 375-76, 578.

When seen for follow-up by Dr. Woods in May 2006, plaintiff reported some leg discomfort. On examination, Dr. Woods found full range of motion and full strength in the lower limbs.  *PageID* 571-72.

Plaintiff saw Gary Bos, M.D., at the OSU Outpatient Clinic in June 2006, for complaints of right hip pain and neuritic symptoms in the ight foot and ankle. Dr. Bos noted good range of motion of the hip.  *PageID* 568.

Following a follow up visit on September 18 2006, Dr. Chiocca reported to Dr. Graham

> that [plaintiff] continues to have back soreness, as well as bilateral hip pain. This keeps her from doing some standing, or walking for very long periods of time without getting pain. She also has this sensation of pain in her right calf and foot whenever the weather gets cold and she gets these shocks in this area. Dr. Bos felt that this may be due to peroneal nerve entrapment. She had an EMG study and I looked at the study today and they did not really find any evidence for that. To me, the symptoms appeared to be more consistent with some type of circulatory trouble, rather than any superficial peroneal nerve dermatoma distribution. However, it is fairly minor compared to the fact that she has this bilateral hip pain and back pain. I

> told her that it seems to me that she is heading toward a permanent disability status because of her back and her hips. She feels that she cannot go back to work to do the occupation that she usually knows how to do. Certainly I would support that at this point.

*PageID* 360.  A note written by Dr. Chiocca on a prescription pad and dated that same day reads, "[Plaintiff] is permanently unable to work."  *PageID* 664.

Plaintiff began treating with primary care physician Bethany Gaskill, M.D., in March 2009. *PageID* 595. Dr. Gaskill noted complaints of chronic back, hip, knee and ankle pain described by plaintiff as a shooting, stabbing, burning sensation that radiates down her leg almost constantly. *Id.* X-rays of the hip, knee, and ankle were normal. Muscle strength was 4/5 in the right lower extremity but otherwise full in all areas. *PageID* 599, 601-02.

Robert Woskobnick, D.O., consultatively examined plaintiff on behalf of the state agency on April 29, 2010. *PageID* 423-29.  Dr. Woskobnick noted a normal gait, full muscle strength, no muscle atrophy, and full range of motion in all regions except in plaintiff's lumbar spine, which manifested some limitations in flexion, extension, and lateral flexion. Plaintiff could perform deep knee bends.  *PageID* 424-25.  Dr. Woskobnick assessed chronic back pain with equivocal positive straight leg raise, greater on the right than on the left, in both the supine and seated positions. According to Dr. Woskobnick, plaintiff could stand up to 4 hours in a work environment so long as she could rest 15 minutes each hour. She could lift up to 20 pounds occasionally. *PageID* 425.

State agency physician Dimitri Teague, M.D., reviewed the file in June 2010, *PageID* 541-48, and opined that plaintiff could occasionally lift/carry ten pounds, stand or walk at least two hours in an 8-hour workday,

4

and sit up to 6 hours in an 8-hour workday. *PageID* 542. Plaintiff could frequently climb ramps/stairs but could never climb ladders, rope or scaffolds and could only occasionally stoop or crouch. She should have no exposure to hazards. *PageID* 543, 545. Dr. Teague found plaintiff's subjective complaints to be partially credible. *PageID* 546.

    **B.**    **Mental Impairments**

The record reflects an April 2002 psychological assessment by David Gorrell, Ph.D., PCC, of Clark County Mental Health Services. *PageID* 335-39. Plaintiff reported that she had been in counseling off and on since the 6th grade. *PageID* 337. She also reported that she sleeps a lot, "doesn't want to get up most of the time," and lacks energy. *Id.* She was taking Effexor for depression. Dr. Gorrell diagnosed a mood disorder, NOS, and recommended weekly counseling. *PageID* 291. Plaintiff continued with counseling through June 2002. *PageID* 331-34, 340-42.

Maymoud Shehata, M.D., of the New Horizons Youth and Family Center, assessed plaintiff in March 2005. Plaintiff's mood was euthymic and her affect was reactive. She was cooperative. Dr. Shehata diagnosed major depression and prescribed Prozac and Wellbutrin. *PageID* 352-53. Plaintiff did not follow up for treatment. *PageID* 351.

Mark Miller, Ph.D., examined plaintiff for disability purposes on two occasions. When he first examined plaintiff in February 2007, plaintiff reported racing thoughts, occasional anxiety attacks, difficulty with short-term recall, depression, passive suicidal ideation and mistrust of others. *PageID* 411-12. Dr. Miller opined that the plaintiff was functioning in the borderline range of intelligence, with a suggested learning disability. *PageID* 413. He diagnosed generalized anxiety

5

disorder, dysthymic disorder, borderline intellectual functioning, and a pain disorder.  *PageID* 414.  According to Dr. Miller, plaintiff was not impaired in her ability to understand, remember, and carry out one and two step job instructions, was moderately impaired in her ability to interact with co-workers, supervisors, and the public, because of her anxiety and depression, was moderately impaired in her ability to maintain attention, concentration and persistence in task completion, and was markedly impaired in her ability to deal with stress and pressure in a work setting, because of her pain disorder, anxiety and depression.  *PageID* 413-14.

In February 2010, plaintiff was evaluated by William Vasilakis, Psy.D., on behalf of the Ohio Department of Job and Family Services. *PageID* 478-81.  Plaintiff reported suicidal thoughts, a history of abuse, high anxiety, panic attacks, and nightmares. *PageID* 479.  According to Dr. Vasilakis, plaintiff was markedly impaired in her ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace, and to accept instructions and respond appropriately to criticism from supervisors.  *PageID* 478.  Dr. Vasilakis characterized plaintiff as unemployable.  *Id.*

Dr. Miller examined plaintiff for a second time in March 2010. He found plaintiff "somewhat depressed," with normal thought processes and conversation, normal concentration, good abstract thinking, and moderate organizational skills.  *PageID* 501-02.  According to Dr. Miller, plaintiff was not impaired in her ability to understand, remember, and carry out one and two step job instructions or to maintain attention and concentration, and was moderately impaired in her ability to interact with

6

co-workers, supervisors, and the public and to deal with stress and pressure in a work setting and to persist in task completion. *PageID* 502. Dr. Miller assigned a Global Assessment of Functioning score of 60, which is indicative of moderate symptoms.  *PageID* 503.

Plaintiff began treatment with Chris Shaheen, PCC, in March 2010. *PageID* 535.  In June 2010, Mr. Shaheen completed a mental status questionnaire in which he listed plaintiff's diagnosis as post traumatic stress disorder ("PTSD"), with rule out bipolar disorder.  *PageID* 537. Mr. Shaheen described plaintiff's daily activities as including cooking, performing household chores, shopping, and using a computer. *PageID* 538. Mr. Shaheen found that plaintiff becomes overwhelmed easily, is irritable, has racing thoughts, poor concentration, a low stress tolerance and inability to concentrate and is often overwhelmed by memories of past trauma.  *Id.*  According to Mr. Shaheen, plaintiff is unable to sustain concentration sufficient to complete tasks. She does not adapt easily to new situations. *PageID* 537.

State agency psychologist Bruce Goldsmith, Ph.D., reviewed the file in April 2010 and found that the record documents affective, anxiety, and somatoform disorders.  *PageID* 523, 525, 526.  According to Dr. Goldsmith, plaintiff is not restricted in her activities of daily living, and has moderate difficulties in maintaining social functioning, concentration, persistence and pace. *PageID* 530. Plaintiff retains the ability to understand, remember, and follow simple instructions. Her ability to sustain persistence and pace, and to interact with others is moderately impaired. She would perform best in a work setting requiring routine tasks, presenting a stable environment and infrequent changes, involving limited

7

public interactions and no over the shoulder supervision.  *Id.* State agency psychologist Alice Chambly, Psy.D., affirmed Dr. Goldsmith's opinion. *PageID* 566.

    **C.**    **Administrative Hearing**

Plaintiff testified at the administrative hearing that she lives in an apartment with her 20 year old son. *PageID* 91. She is divorced but is "seeing someone." *Id*. She does not leave her residence without her son and relies on him to help her climb stairs. *PageID* 92. She drives about once a week; she drove herself to the hearing. *PageID* 92-93.

Plaintiff testified that pain in her back and legs keeps her from work. *PageID* 100.  She described the pain as extending from the middle to the base of her spine down her legs, often causing numbness in her right leg. *Id.* She underwent breast reduction surgery in an effort to reduce her back pain.  *PageID* 112. Neither that surgery nor back surgery provided lasting relief.  *Id.* She takes Naproxen for pain.  *Id.*

Plaintiff also testified that she cannot work because "I don't like being around people." *Id*.  She "can't keep [her] mouth shut." *PageID* 101. That problem had worsened in the three years prior to the hearing.  *Id.* Depression and post-traumatic stress disorder also affect her ability to work; she cries a lot and cannot maintain focus: "I start one thing, and then I move on to something else, and then I totally forget about . . . and I can't seem to complete my tasks." *Id.* She feels worthless. *PageID* 117. She experiences panic attacks three times per week, each lasting three to five minutes. *PageID* 118.

Plaintiff can complete limited household chores on her "good days," but her bad days outweigh her good days. *PageID* 103. She can dress herself,

8

but her sons tie her shoes.  *PageID* 105. She spends most of the day sitting; she can sit for 30 to 45 minutes before having to change positions.  *PageID* 106.  She cannot walk more than one block; she can stand for approximately 15 minutes before she must change positions.  *PageID* 107. She can occasionally lift a gallon of milk.  *PageID* 107-08.  She goes grocery shopping once per week, usually at night. *PageID* 109. Her son performs most of the household chores.  *Id*.

Asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity eventually found by the administrative law judge, the vocational expert testified that such a claimant could not perform any of plaintiff's past relevant work, *PageID* 124-25, but could perform such jobs as addresser and stuffer.  *PageID* 125.

### III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of pain disorder, generalized anxiety disorder, dysthymic disorder, borderline intellectual functioning, posttraumatic stress disorder, right hip osteoarthritis, and status post L4-5 and L5-S1 hemilaminectomies and medial facetectomies. *PageID* 66. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment. *PageID* 66-69. Plaintiff's impairments leave her with the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. Additionally, she must avoid exposure to hazards such as working at unprotected heights and working around dangerous moving machinery. The claimant can perform simple, routine, no more than Specific Vocational Preparation (SVP) 2-type tasks in an environment with no more than occasional change, without fast-paced production or strict time quotas, and with only occasional interaction with others.

*PageID* 69.

In determining plaintiff's RFC, the administrative law judge stated that he considered opinion evidence in accordance with the requirements of 20 CFR §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. *PageID* 69. Specifically, the administrative law judge afforded "little weight" to Mr. Shaheen's assessment of plaintiff's mental impairments, characterizing it as inconsistent with plaintiff's activities of daily living. *PageID* 73. The administrative law judge assigned "significant weight" to Dr. Miller's opinions, finding them to be consistent with plaintiff's mental health longitudinal medical history and supported by Dr. Miller's examination findings. *Id.* The administrative law judge assigned "some weight" to the opinion of the state agency reviewing psychologist, Dr. Goldsmith, finding that his opinion did not account adequately for plaintiff's difficulties with handling stress. *PageID* 73-74.

In considering the plaintiff's physical RFC, the administrative law judge determined that Dr. Chiocca's opinion was inconsistent with the longitudinal medical evidence and was not supported by the evidence in September 2006. *PageID* 74. However, the administrative law judge appeared to consider only Dr. Chiocca's statement of disability written on a prescription pad in September 2006, questioning its validity because it was not made part of plaintiff's disability file until the March 2012 administrative hearing. *Id.* The administrative law judge assigned "some weight" to the opinion of the reviewing state agency physician Dr. Teague. *PageID* 73.

10

Although the RFC found by the administrative law judge precluded the performance of plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the regional economy, including 2,625 jobs at the sedentary level of exertion such as an addresser and stuffer.  *PageID* 75. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 15, 2006, through the date of the administrative law judge's decision.  *PageID* 76.

**IV. Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra*

*v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Specific Errors*, plaintiff contends that the administrative law judge failed to properly weigh the opinions of her treating physicians. *Statement of Specific Errors*, *PageID* 675. This Court agrees that the administrative law judge failed to properly evaluate Dr. Chiocca's September 18, 2006 medical opinion.[1]

The opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§404.1527(d)(2); 416. 927(d)(2). If the administrative law judge finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §§404.1527(d)(2),(4);

---

[1] Plaintiff also argues that, in determining plaintiff's RFC, the administrative law judge failed to properly evaluate the opinions of plaintiff's treating mental health professionals and her complaints of pain. Because the Court concludes that remand of the action is appropriate, the Court does not consider these separate issues.

12

416.927(d)(2),(4). Finally, the Commissioner must provide "good reasons" for discounting the opinion of a treating source, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir. 2007). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

On September 18, 2006, Dr. Chiocca – plaintiff's treating neurosurgeon – rendered the following medical opinion:

> [plaintiff] continues to have back soreness, as well as bilateral hip pain. This keeps her from doing some standing, or walking for very long periods of time without getting pain. She also has this sensation of pain in her right calf and foot whenever the weather gets cold and she gets these shocks in this area. Dr. Bos felt that this may be due to peroneal nerve entrapment. She had an EMG study and I looked at the study today and they did not really find any evidence for that. To me, the symptoms appeared to be more consistent with some type of circulatory trouble, rather than any superficial peroneal nerve dermatoma distribution. However, it is fairly minor compared to the fact that she has this bilateral hip pain and back pain. I told her that it seems to me that she is heading toward a permanent disability status because of her back and her hips. She feels that she cannot go back to work to do the occupation that she usually knows how to do. Certainly I would support that at this point.

*PageID* 360. The administrative law judge made no mention whatsoever of this report and opinion. Rather, the administrative decision referred only to Dr. Chiocca's notation that plaintiff "is permanently unable to work," P*age*ID 664, purportedly written on that same date but presented for the first time at the administrative hearing:

> At the hearing, the claimant provided a prescription form that September 18, 2006 [sic] reportedly from E. Antonio Chiocca, M.D., Ph.D., that state [sic] "Ms. Robinson is permanently unable to work." (Exhibit 34F). That this "prescription" was not provided until the day of the hearing despite having been reportedly written in September 2006 calls into question the validity of this statement. Additionally, statements that a claimant is "disabled", "unable to work", can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such administrative findings are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability (20 CFR 404.1527 & 416.927; SSR 96-5p). The undersigned finds this statement to be inconsistent with the longitudinal medical evidence and not supported by any evidence from September 2006. Therefore, the undersigned gives this opinion no weight.

*PageID* 74. Because the administrative law judge failed to either mention or consider Dr. Chiocca's lengthy medical report dated September 18, 2006, the Court concludes that the matter must be remanded for proper consideration of this opinion of plaintiff's treating physician.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded to the Commissioner of Social Security pursuant to Sentence 4 of 42 U.S.C. § 405(g) for further consideration of the opinion of plaintiff's treating neurosurgeon.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo*

review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: October 31, 2014                                  *s/Norah McCann King*
                                                        Norah McCann King
                                                United States Magistrate Judge